People of State of Illinois ex rel. Raymond J. Hahn et al., Appellants, v. Stephen E. Hurley et al., Members of Civil Service Commission of City of Chicago, and Lloyd M. Johnson, Commissioner of Department of Streets and Sanitation of City of Chicago, Appellees.

Gen. No. 46,447.

First District, Third Division.

September 28, 1955.

Released for publication October 18, 1955.

Michael F. Ryan, of Chicago, for appellants; Richard F. McPartlin, Jr., of Chicago, of counsel.

John J. Mortimer, Corporation Counsel of City of Chicago, for appellees; L. Louis Karton, Head of Appeals and Review Division, and Arthur Magid, Assistant Corporation Counsel, both of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a mandamus proceeding to compel nullification of a civil service examination and resultant list for sign hangers in the city of Chicago. The court denied the writ and plaintiffs have appealed.

The Civil Service Commission called the examination October 18, 1951 and after several delays it was given April 11, 1953. When they took the examination plaintiffs were employed as sign hangers by the city, under temporary appointments. Moscato had been appointed in October 1951, Finucane in April 1952 and Hahn in May 1952.

Two hundred twenty-two applicants took the examination and one hundred twenty-one, including plaintiffs, passed. Moscato was given a mark of 70, Finucane a mark of 71.67 and Hahn a mark of 74.67. These marks placed them respectively number 119, number 105 and number 71 on the eligible list. The places were not high enough to qualify them for certification to positions of sign hanger provided in the city budget. They were discharged from their temporary positions and thereafter brought this suit.

The principal issues made by the pleadings were whether the Civil Service Act was violated because the examination did not include physical qualification and health tests; whether the examination was sufficiently practical and relevant to test the relative capacities of the applicants; and whether these failures rendered the examination void. The court found that the failure to include physical qualification and health tests violated the Civil Service Act. The writ, however, was denied. The question here is whether this ruling was erroneous.

Defendants admit that the examination did not include physical qualification and health tests. The trial court's finding implies that plaintiffs had a clear right to the writ because it found the act was violated but it

refused the writ because the harm to follow awarding the writ would outweigh the good to result in granting it.

■ In People ex rel. McCormick v. Western Cold Storage Co., 287 Ill. 612, at page 618, the court said:

"There may be circumstances under which the writ will not operate fairly, will occasion confusion or disorder or will not promote substantial justice, and under which the court may therefore deny the writ though the petitioner has a clear legal right. This discretion . . . must be exercised according to legal principles, and ordinarily, where a clear legal right is shown, petitioner is entitled to the writ."

The trial judge in the instant case thought he should take judicial notice "from the testimony" of the harmful effect of awarding the writ. We have been unable to find any testimony which would justify this notice; there is no evidence that any harmful results would follow. People ex rel. Herlihy Mid-Continent Co. v. Nudelman, 370 Ill. 237, 241. We conclude that the decision was an abuse of discretion, if plaintiffs showed a clear legal right to the writ.

The question pending involves a construction of Sec. 6 of the Cities Civil Service Act (Ill. Rev. Stat. 1953, Chap. 24½, Pars. 39–77a [Jones Ill. Stats. Ann. 23.040–23.080(a)]). The pertinent parts of that section are:

"All applicants . . . *shall* be subject to examination, which *shall* be public, competitive, and open . . . with specified limitations as to residence, age, health, habits and moral character. . . . Such examinations *shall* be practical in their character, and *shall* relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions . . ., and *shall* include tests of physical qualifications and health, and when appropriate of manual skill; provided, however, whenever an appli-

109

cant *shall* be unable to pass the physical examination solely as a result of an injury . . . received . . . as the result of the performance of an act of duty . . . as a temporary employee in the position for which he is being examined, such physical examination *shall* be waived and the applicant *shall* be considered to have passed. . . ." (Emphasis added.)

In the first sentence of the section the use of the word *shall* is clearly imperative requiring the examinations to be public, open and competitive. The first several clauses, preceding the proviso, in the second sentence quoted we think set down the norms for examination and consequently the use of *shall* therein is again imperative, requiring that examinations be practical, relevant to duties and include tests of "physical qualifications and health." We think that *shall include* is implied as an imperative before the phrase "when appropriate of manual skill." This implied imperative is made relative by the term "when appropriate" requiring manual skill tests when reasonably proper. The discretion given with respect to manual skills is absent from the preceding imperatives in that sentence and confirms their imperative character. The use of *shall* in the proviso expresses simple futurity in its first use anticipating the injury and expresses a mandate with respect to waiver because of the injury. In Teece v. Boyle, 345 Ill. App. 88, 98, this court stated that "the connotation of the word 'shall' is not fixed" and its meaning "must be gained primarily from the legislature's intent as shown by the context." The uses of *shall* in Sec. 6 support the court's statement.

The waiver proviso in the second sentence quoted contemplates a physical examination, of the injured applicant, included in the examination for the position. The second paragraph of Sec. 6 which we did not deem necessary to set out here, provides for a "second examination" prior to appointment, of an eligible under certain circumstances. This clearly presupposes the

examination provided for in the sentence we have analysed above.

■ We conclude that the legislature intended that "tests of physical qualifications and health," must be included in the examination for the position of sign hanger. Arguments of defendants about the expense, time and inconvenience involved should be made to the legislature. We agree with the finding of the trial court that the examination violated Sec. 6 of the Cities Civil Service Act and that a clear right has been shown for issuance of the writ. We need not decide whether the examination also violated Sec. 6 in that it lacked practicality and did not fairly test the relative capacities of the applicants.

Defendants rely upon dictum in People ex rel. Carter v. Hurley, 4 Ill.App.2d 24. This court in that case decided that a temporary injunction was improvidently issued because equity had no jurisdiction in actions involving purely political rights. The court "expressed its views" on a further question it was "not called upon to decide" and concluded that the tests of physical qualifications and health were not intended by "the statute to be a subject for competitive examination."

Plaintiffs here claim a violation of the act because the sign hangers examination did not include "tests of physical qualifications and health." Defendants extend this claim in their brief and argue that the act does not make mandatory the inclusion of those tests in the "competitive examination." We see no need of going beyond the claim of plaintiffs to sustain the trial court's finding of a violation of the act. (It is interesting to note, however, that in the 1949 sign hangers examination physical qualification tests were competitive factors and at the time of this trial they were factors in examinations for crossing guard, bricklayer, steam fitter, bridge tender, electrical mechanic and lineman.) The Carter case dictum is not helpful in this case.

This court in People ex rel. Clark v. Hurley, 343 Ill. App. 182, decided that the act did not "so clearly require" a competitive manual skill test in the examination for lineman as to make mandamus appropriate. That case is not pertinent here.

In People ex rel. Witherell v. Chicago, 131 Ill. App. 266, the Appellate Court decided that the trial court properly expunged that part of the prayer for relief which sought a recomputation of grades in a civil service examination, eliminating, among other things, "lung and muscle tests." This court thought the commission had discretion to decide whether the examination for police officer should include "certain physical tests." Cited to this statement was Reddick v. People ex rel. Mason, 82 Ill. App. 85, 92. This case involved mandamus of sanitary district trustees to instruct their clerk to pay a contractor's bill. This holding was an application of the rule that municipal authorities having discretion may be compelled to act but not in any particular way. We are of the opinion that the Witherell case is not authority for the proposition that the act does not require including tests of physical qualifications and health.

We think the trial court's finding of violation of the Cities Civil Service Act was correct but we think denial of the writ was error. The judgment is reversed and the cause remanded with directions to order that the writ issue.

Reversed and remanded with directions.

LEWE, P. J. and FEINBERG, J., concur.